[No. 3644.]

## L. CRADDOCK v. THE STATE.

1. SUNDAY LAW.— CHARTER OF THE CITY OF DALLAS, section 50, empowers the city to " close drinking-houses, saloons, bar-rooms, beer saloons, and all places or establishments where intoxicating or fermented liquors are sold, on Sundays, and to prescribe hours for closing them,"— employing the language used in the Revised Statutes, article 391. The ordinance enacted under the said section prohibits barter or traffic of any character whatever, in the city of Dallas, on Sunday, between the hours of 9 o'clock A. M. and 4 o'clock P.

M., except by dealers in drugs, medicines and provisions, and markets. *Held*, that the charter in connection with the ordinance was a defense to a prosecution for selling liquors before 9 o'clock A. M. and after 4 o'clock P. M. on Sunday. The rule has been heretofore announced, in Davis's case, 2 Texas Ct. App., 425, as follows: " In the absence of constitutional restrictions, it is competent for the Legislature, by charter or .special act, to empower a municipality to license, within its limits, occupations which are illegal and punishable under the general laws of the State; and a municipal charter and by-laws may, expressly or by necessary implication, thus supersede the general law on such subjects, within the limits of the corporation." See the opinion *in extenso* on the question.

2. Same.— Municipal Corporations have only such powers as have been granted to them. These are in part conferred by special grants of power, and partly in general terms authorizing them to pass all ordinances applicable to them and not repugnant to the Constitution or the laws of the State. Such is the effect of section 14 of the act amending the charter of the city of Dallas (Special Laws, Nineteenth Legislature), which must, therefore, be held a grant of power, rather than a repeal of special power already granted over a particular subject.

Appeal from the County Court of Dallas. Tried below before the Hon. E. G. Bower, County Judge.

The prosecution and conviction in this case were had under an information which charged the appellant with the violation of article 186 of the Penal Code, as amended at the regular session of the Eighteenth Legislature. The offense charged consisted in the sale of intoxicating liquor on Sunday. A fine of $20 was the punishment assessed against the appellant.

The opinion sufficiently discloses the case.

*W. H. Johnson* filed an able brief and argument for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State. By article 186, Penal Code, as amended by the Eighteenth Legislature, regular session (General Laws, p. 66), it is provided that " Any merchant, grocer, or dealer in wares or merchandise, or trader in any lawful business whatever, or the agent or employee of any such persons, who shall sell or barter on Sunday, shall be fined not less than twenty nor more than fifty dollars; provided, this article shall not apply to markets or dealers in provisions as to sales of provisions made by them before 9 o'clock A. M., nor the sale of burial or shrouding material; provided, the sale of newspapers, ice and milk at any hour in the day shall be permissible; provided, further, that nothing in this title shall be construed to prevent the sending or receiving of telegraph messages."

Appellant was prosecuted under this article, and it was alleged and proved that he was a trader in a lawful business. Neither the sale nor the article sold comes within any of the exceptions provided for in said article.

It was proved that a sale of whisky was made by appellant on Sunday, but that the same was made before 9 o'clock A. M.

Appellant pleaded specially, in addition to his plea of "not guilty," that he was exempt from the provisions of article 186 of the Penal Code, by virtue of section 4 of an ordinance of the city of Dallas, passed by the city council on the 10th day of December, 1880, and which is as follows, viz.: "Sec. 4. That any merchant, grocer, or dealer in wares, merchandise, or trader in any lawful business whatsoever, who shall barter or sell on Sunday, between the hours of 9 o'clock A. M. and 4 o'clock P. M., shall be fined not less than twenty nor more than fifty dollars; provided, this does not apply to the sale of drugs and medicine, or to dealers in provisions, or markets."

This is the ordinance under which appellant sold the whisky, as charged; but it is denied by appellee that there is anything in the ordinance which can exempt appellant from the operation of the provisions of the State law, as expressed in article 186 of the Penal Code. It is to be observed that anything in the ordinance which is contrary to, or in conflict with, the provisions of said article 186 is void because passed without authority of law, and in violation thereof, because by the fourteenth section of the amended charter of the city of Dallas (Special Laws, 19th Leg., p. 24), which was in full force when the offense in this cause was committed (the same having been passed with the emergency clause), the power of the city council of Dallas is restricted to the passage of ordinances and the adoption of resolutions, rules and police regulations "not contrary to the Constitution and laws of the State of Texas."

Now, can it with reason be said that because an ordinance passed in 1880 limited the time for its violation to the hours between 9 o'clock A. M. and 4 o'clock P. M. on Sundays, that it abrogates the provision of the article of the State law which covers the entire day? Or shall the creature say to its creator, you shall not enforce obedience to your commandments because, by the failure of the creature to approve by enactment of commands similar in all respects thereto, they have by implication been abrogated? Certainly nothing could be more absurd.

"Where there is no law there is no transgression;" and hence appellant was not amenable to the city ordinance for the offense for which he was prosecuted in this case, because the ordinance did

not cover the time when committed. There was and could be no concurrent jurisdiction · between the courts of the State and the city, as is contemplated by the fourteenth section .of the amended charter of the city of Dallas, wherein it is "provided that, whenever the courts of the State and the city courts have concurrent jurisdiction of an offense, the court which first acquires jurisdiction shall have the exclusive jurisdiction of such cause." Of this offense the State alone can have jurisdiction through her cour¹s, and the city ordinance, therefore, can cut no figure in the case.

If the construction of the law contended for by appellant were correct, then the provisions of article 186 of the Penal Code might be annulled by the town council of every town incorporated under the general laws for incorporating towns and cities; for, by article 391, Rev. Civil Statutes, it is provided that they may have power "to close drinking-houses, saloons, bar-rooms, beer saloons, and all places or establishments where intoxicating or fermented liquors are sold, on Sundays, and prescribe hours for closing them, and also all places of amusement and business;" and by article 342, Rev. Civil Statutes, it is also provided that such town and city councils "may ordain and establish such acts, laws, regulations and ordinances, not inconsistent with the Constitution and laws of this State, as shall be needful," just as is provided in the charter of Dallas.

It is contended by the State that these powers are conferred on the city councils of towns and cities generally, and on Dallas specially, to enable them, in the event of the repeal of the State law, to regulate their own municipal affairs in the interest of peace and good order, and especially on Sunday; but that it was never intended to empower them to abrogate and annul a State law in actual existence and force.

However, it is submitted that on the authority of the opinion of this court in the case of *Augenhoffer* v. *The State*, 15 Texas Ct. App., 613, this cause must be decided adversely to the appellant.

HURT, JUDGE. The appellant was prosecuted by information in the county court of Dallas county for selling liquors on Sunday, the 31st day of May, 1885. Besides the plea of not guilty, he specially pleaded section 50 of the charter of Dallas, and an ordinance passed thereunder.

There are two questions presented for our consideration: First, did the charter authorize the ordinance? Second, has the power conferred by the charter been abrogated?

Section 50 empowers the city "To close drinking-houses, saloons,

bar-rooms, beer saloons, and all places or establishments where in-toxicating or fermented liquors are sold, on Sundays, and prescribe hours for closing them," — the same language used in the Revised Statutes, article 391. This charter was granted in 1876.

The ordinance provides that "any merchant, grocer or dealer in wares, merchandise, or trader in any lawful business whatsoever, who shall barter or sell on Sunday, between the hours of 9 o'clock A. M. and 4 o'clock P. M., shall be fined not less than twenty nor more than fifty dollars." The ordinance excepted from its opera-tion dealers in drugs, medicines and provisions, and markets. The ordinance, it was admitted, had not been repealed. It was admitted that the defendant was licensed as a saloon keeper by the State at the time the offense was charged to have been committed, and was licensed as such by the city at the time of his arrest.

The charter gives the city the power to close the places, which includes the power to prevent business of the kind named from being carried on there at all on Sundays; but it also confers the power to prescribe the hours during which they shall remain closed. If the intention had been that the city should only have power to close during the entire day, there would have been no necessity for adding "and prescribe the hours for opening and closing;" the latter expression would be surplusage, a construction which will not be accepted as long as any reasonable meaning can be attached to it. There is a specific intent manifest from the language used to confer the power to *prescribe the hours* during which the named places were to be closed. What hours? Any hours the city might choose in the day. At what hour Sunday began, and when it ended, was already fixed. There would, as stated, have been no necessity for giving the city power to prescribe hours, unless the law intended that the prohibition might last for a less number of hours than the whole.

We think, therefore, that the charter, in connection with the ordinance, unless otherwise invalid, was a defense against any pros-ecution for selling liquors before 9 o'clock A. M. and after 4 o'clock P. M.

That the power granted in the charter is in conflict with the gen-eral law may be admitted; but a general law will not be construed as a repeal of a special one when the latter may well be upheld, not-withstanding the general law is an exception thereto. Where one or the other must give way, the question is one of intention, to be de-termined from the entire legislation. There are some legal principles and some facts which enable us to solve this question of intention.

Repeals by implication are not favored, and special laws conferring particular rights upon municipal corporations are not repealed by subsequent statutes, general in their character. (Dillon on Mun. Corp., sec. 54 and note 1; Id., sec. 50.) The Legislature, subsequent to the charter, repealed various sections by number therein, and made amendments to it, but this section 50 was not mentioned,— a strong proof of the intention of the Legislature to let it remain. If we consider the object to be subserved, the result is the same. It has been the policy of this, and of most, if not all, of the States to leave questions of this character to the municipal corporations.

Section 50 is in the same words as article 391, Revised Statutes, and the ordinance is in the same language as that contained in article 186, Penal Code, except that the former prescribes the hours. If the power to prescribe the hours in article 391 (inconsistent and repugnant to article 186, Penal Code) had not been intended by the Legislature as an exception to the general law, and so coming within the principles of law above cited from Dillon, it must be treated as repealed *by implication* by the *same Legislature* which incorporated both provisions in the Revised Statutes,— a conclusion not to be entertained unless there is no escape from it. The city, under the power to prescribe hours, exercises a special right conferred upon it to meet its own local necessities.

There can be no question of the authority to thus delegate special powers to be exercised in particular localities. General laws are often wholly inapplicable to the State at large, and it has accordingly been the policy of our law to refer to the wisdom of local authority questions of this character. The wants, habits of thought, and even the prejudices, of the population of so large a State as ours are so variant that it would be most unwise to deal with all alike. We think that the special provision in the charter was intended as an exception to the general law. (See Dillon on Mun. Corp., vol. 1, secs. 53, 54, and note 1, with authorities there cited; *Davis* v. *The State*, 2 Texas Ct. App., 425.)

It may be insisted that section 14 of the special law of the Nineteenth Legislature, amending the charter of the city of Dallas, operates as a repeal of section 50. But, apart from the general principles stated above, and which are applicable in considering this question, we may add that all the powers of a municipal corporation *are granted* to it. They have none other. These are in part conferred by special grants of power, and partly in general terms authorizing them to pass all ordinances applicable to them, not repugnant to the Constitution or laws of the State. This is what section 14 of the

amendatory act does in the particular matters therein set forth. This cannot be held a repeal of all of the special grants of power in the city charter which may be in direct conflict with general law, and precisely so because the conditions under which the people live in that city may be radically different from those prevailing elsewhere. We regard that part of section 14 rather as a grant of power than as a repeal of special power already granted over a particular subject.

The judgment is reversed and the prosecution dismissed.

*Reversed and dismissed.*

[Opinion delivered June 24, 1885.]